UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :

      v.   :   CR-05-186 (RJL)

GREGORY A. GOODING   :

DEFENDANT'S SENTENCING MEMORANDUM

On October 14, 2005, Mr. Gregory A. Gooding, the defendant, pled guilty before this Honorable Court to the one count indictment, charging him with possession of a firearm and ammunition by a person convicted of crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g).  He will appear before this Honorable Court for sentencing on January 20, 2006.  Mr. Gooding, through undersigned counsel, respectfully submits the following for the Court's consideration in determining a reasonable sentence.  See United States v. Booker, __ U.S. __, 125 S.Ct. 738, 768 (2005) (sentences reviewable only for reasonableness).

Factual Background

Mr. Gooding is twenty-six years old.  He was born in 1979, and his mother died five years later, in 1984.  Mr. Gooding's father and paternal grandmother took responsibility for raising him, but his father spent little time with him.

As a young boy and into his teenage years, Mr. Gooding found the comfort of family at his church, the Holy Temple Church of Christ.  He became a young minister and spent most of his free time at the church.  In his neighborhood, he was nicknamed "Churchboy."  Rather than embracing his son's participation in church activities, his father criticized him.  Mr. Gooding

found little support at home and as soon as he was able, after dropping out of high school, he moved out of his father's home and into an apartment of his own.

Since leaving his father's home, Mr. Gooding has worked hard to maintain employment. From 1998 to 2001, he worked as a courtesy clerk at Safeway. In 2001, he worked at Hecht's Department Store. In 2002, he was a counselor at Christian Outreach program for a brief period before it lost founding and then was a parking garage attendant.

Unfortunately, in junior high school Mr. Gooding sought relief from his difficult home life in alcohol, marijuana, PCP and ecstacy, and his drug use continued until 2001, when it led to his arrest. In 2001, at the age of twenty-two, Mr. Gooding was charged with distribution and possession with intent to distribute PCP. He later pled guilty to the charges and was sentenced to a term of probation. In 2004, he was arrested for possession of marijuana when the United States Park Police discovered a blunt in the headrest of his car. Mr. Gooding pled guilty and was sentenced to a one year term of supervised probation. Because of this conviction, his earlier probation was terminated unsuccessfully. His only other conviction was for driving without a permit in February, 2005.

Mr. Gooding respectfully disputes the information submitted in paragraph 23 of the Presentence Investigation Report. He has maintained employment, as set forth in paragraph 48 through 51 of the Presentence Investigation Report, and completed his community service. After completing the final Presentence Investigation Report, the probation office verified that Mr. Gooding completed his community service. Therefore, the report should be amended.

In 2003, Mr. Gooding obtained a job working full-time in the seafood department at Whole Foods Market in Dupont Circle. Mr. Gooding worked hard abide by the conditions of his

probation and to earn enough money to pay his rent and support his first-born daughter who was born in 2002. However, because the plumbing in his apartment did not work properly and after making several attempts to get the landlord to make the necessary repairs, Mr. Gooding began to withhold rent. He now recognizes that he did not go about that process appropriately because his landlord soon sought to evict him.

The charge at issue here occurred when agents of the United States Marshals Service went to his apartment to evict him on April 20, 2005. As the Marshals were removing property from his apartment, they located the gun and ammunition under his mattress. Mr. Gooding was arrested and held without bond.

Five days later, on April 25, 2005, he was released to the high intensity supervision program, and he moved in with his grandmother. As the presentence report writer verified, Mr. Gooding has abided by all of the conditions of his release – he has reported as instructed, consistently tested negative for illegal substances and abides by his 10:00 p.m. curfew.

In November 2005, Mr. Gooding's girlfriend gave birth two his second daughter. She was born premature and spent several weeks in the hospital, but fortunately is now home and doing well. As noted above, Mr. Gooding also has a three-year-old daughter, whom he had full custody of until he lost his apartment and was arrested in this case. He still cares for his three-year-old daughter every weekend and, as her mother reports, he is a good father.

Because of his brief detention in this case, Mr. Gooding lost his job at Whole Foods. However, after his release in this case, Mr. Gooding obtained a job at Domino's Pizza as a driver. He then obtained a position as a manager in training. Last Thanksgiving, however, Mr. Gooding was playing football and injured his rotator cuff, requiring surgery. Due to this injury,

he has not been able to begin the manager in training program. Recently, he obtain another job, working as a driver for Metro Access.

## Argument

The Presentence Investigation Report calculates the applicable sentencing range under the United States Sentencing Guidelines (hereinafter "Guidelines") as a range of 30 to 37 months incarceration. The Guidelines, or course, are not mandatory. The Court must only consider the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a). <u>United States v. Booker</u>, __ U.S. __, 125 S.Ct. 738, 764 (2005). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Following <u>Booker</u>, Courts need not justify sentences outside the applicable Guidelines range by citing an applicable Guidelines grounds for departure or factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in § 3553, the Court may disagree with the range proposed by the Guidelines and exercise discretion to impose a sentence outside the range.

After considering all of the factors set forth in § 3553(a), the Court must impose a

sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)). Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

In this case, a sentence lower than the applicable Guidelines range is appropriate for many reasons. First, Mr. Gooding's sentencing range under the Guidelines is based on the double counting of his criminal history. Mr. Gooding's sentence for the 922(g) charge is governed by U.S.S.G. § 2L1.2, which uses prior convictions to establish the offense level as well as the criminal history score. While it is "sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis." United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 961 (E.D. Wisc. 2005). Because his only prior felony conviction is for a drug offense, his offense level was increased from a level 14 to a level 21. He also received 1 of his criminal history points because of this conviction. Thus, the conviction served to increase his sentencing range for this offense from 12 to 18 months to a range of 30 to 37 months. Mr. Gooding recognizes that his prior criminal history is relevant to

the Court's analysis under 18 U.S.C. § 3553, however, he submits that the guidelines scheme greatly overstates this one factor.

When considering the Guidelines, the Court should also consider that in 2003, the Sentencing Commission issued a policy statement, contained in U.S.S.G. §5K3.1, in which the Commission approved of a downward departure of up to 4 levels for defendants who agreed to plead guilty very early on in the proceedings. The merits of this policy statement are readily apparent. Early dispositions conserve scarce prosecutorial and judicial resources. As this Court is fully aware, there are an overwhelming number of possessory gun cases prosecuted in this district. Many of these cases clog the courts' calendars while the parties attempt to "hammer out" an agreement resulting, almost always, in the defendant simply pleading to the indictment several months later. §5K3.1 implements the Sentencing Commissions' desire that defendants who agree to plead early on in the proceedings receive additional dispensation. Here, Mr. Gooding agreed to pled early on in the proceedings, although due to continuances unrelated to Mr. Gooding's willingness to accept responsibility, it took some time for the plea to go forward. A four level reduction in the offense level here – even without adjusting for the double counting of his criminal history – would reduce the Guidelines range from 30 to 37 months to 18 to 24 months.

A review of the other applicable factors set forth in § 3553(a) demonstrates that a sentence of supervised release would be a reasonable sentence in this matter. When considering the nature and circumstances of the offense, the Court should consider the circumstances that led to the offense. This is not a case of Mr. Gooding possessing a weapon on his person on the streets of Washington, D.C. He found the weapon and kept it in his apartment, solely for the

protection of himself and his family, because there had been a number of burglaries in his neighborhood. The Court should also consider that immediately after his arrest Mr. Gooding admitted that he possessed the firearm in his home, for protection.

When considering Mr. Gooding's character, the Court should consider that Mr. Gooding is a good, responsible father, who is trying hard to support his children. The Court should also consider that Mr. Gooding has demonstrated his ability to do well under supervision in this matter, by abiding by the conditions of his release over the last ten months.

## Conclusion

For the foregoing reasons, and such other reasons as may be presented at the sentencing hearing, Mr. Gooding respectfully requests that the Court not impose a sentence of any additional incarceration and impose a sentence of supervised release.

Respectfully submitted,

/s/

_____
Mary Manning Petras
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500